The STATE of Ohio, Appellee,

v.

RILEY, Appellant.

[Cite as *State v. Riley* (1993), 88 Ohio App.3d 468.]

Court of Appeals of Ohio,
Wood County.

No. 92WD018.

Decided June 30, 1993.

*Alan Mayberry,* Wood County Prosecuting Attorney, and *Scott T. Coon,* for appellee.

*Allen N. Kepke,* for appellant.

ABOOD, Judge.

This is an appeal from judgments of the Wood County Court of Common Pleas which denied appellant Steven Riley's motion to suppress and, following a jury trial, found appellant guilty of one count of trafficking in marijuana in violation of R.C. 2925.03(A)(4) and of having previously been convicted of a felony drug offense. Appellant sets forth the following assignments of error:

First Assignment of Error:

"The trial court erred by overruling appellant's Crim.R. 29 motions for acquittal based upon insufficiency of the evidence."

Second Assignment of Error:

"The trial court erred by overruling appellant's motion to suppress evidence obtained as a result of the unconstitutional search of the car in which a controlled substance was found."

The undisputed facts that are relevant to the issues raised on appeal are as follows. On May 31, 1991, appellant and several companions drove to the Hoytville Tavern in a 1968 Chevy Impala. While appellant was inside the tavern, Hoytville Police Chief Terry Hawk, parked in a nearby lot, decided to check the license plates on the Impala to verify ownership and learned that the plates were registered to a Toyota owned by appellant. Hawk contacted the Wood County Sheriff's Department and a deputy was sent over. Hawk and the deputy agreed to pull the car over after it left the bar. Eventually, appellant and his companions drove off in the car. Hawk pulled the car over and cited appellant for having illegal plates. Appellant had no registration for the car and a computer check of the vehicle identification number showed that he did not own it. The officers told appellant that the car would be towed and impounded until he presented the proper registration and plates. Appellant turned over the keys. Later that night, while the car was impounded, the sheriff's department conducted an inventory search. During the course of the inventory, they discovered that the trunk was locked and that they had no key for it. The officers then decided to call for a K-9 unit. The dog was brought to the site and twice indicated that there were drugs in the trunk. Sergeant Rex Russell of the Wood County Sheriff's Department prepared an affidavit which was taken to a judge who issued a search warrant for the trunk. The officers pried open the trunk and found a plastic bag containing what appeared to be marijuana.

Appellant was indicted for knowingly possessing 376.6 grams of marijuana in violation of R.C. 2925.03(A)(4), with specifications that he owned the car in which the marijuana was found and that he had been convicted of trafficking in drugs in 1988. Appellant entered a plea of not guilty. On August 26, 1991, appellant filed

a motion to suppress the evidence found as a result of the stop, his arrest and the search of his car. In support of his motion, appellant argued that the factual assertions in the affidavit for the search warrant were obtained as a result of the unlawful seizure of his car and that the affidavit did not provide sufficient probable cause to support a subsequent search of the car. On September 12, 1991, a hearing was held on the motion to suppress. At the hearing, Sergeant Russell and Terry Hawk both testified to the events of May 30 and 31, 1991. Hawk testified as to his discovery that appellant had improper plates on the car, as well as no registration for the vehicle, and as to the subsequent search of the car. Hawk testified that it was he who requested a K–9 unit to check the car after it was impounded. Russell testified that he was not present when the dog was brought in but that he had been informed by the dog's handler that the dog had indicated there were drugs in the trunk. He testified that he had full confidence in the skill of the K–9 unit and, based on that, he prepared the affidavit for the search warrant. He testified further that he was certain that they had probable cause for a search warrant and that he was aware that appellant was a suspected drug trafficker.

At the conclusion of testimony, the state argued that the illegal license plates and appellant's failure to produce registration for the car led to a lawful stop and seizure of the car. The state also argued that the K–9 unit's indication that there were drugs in the trunk, coupled with the knowledge that appellant was a suspected drug dealer with a prior drug trafficking conviction, amounted to probable cause for the search warrant. On October 18, 1991, the trial court found that the stop and seizure of appellant's car were justified and reasonable under the circumstances and that there was a substantial basis for concluding that probable cause existed for a search warrant. The court denied appellant's motion to suppress and set the case for trial on January 7 and 8, 1992.

At trial, the state presented the testimony of nine witnesses. Terry Hawk testified as to the events of May 30, 1991, leading up to his citing appellant for illegal plates and impounding the car as summarized above. Hawk testified further that he inventoried the car after it was towed and found no keys for the truck and that he had stayed with the car while the other officers went to get the search warrant. He stated that no one had access to the car or trunk in the meantime.

Deputy William Davisson of the Wood County Sheriff's Department testified that on May 30, 1991, he received orders to respond to a call for back-up from Hawk prior to his stopping appellant. Davisson then followed the car to the impound lot and observed the K-unit sniff the car. He also was present when the trunk was opened and saw a package of "green vegetation" in the front of the trunk near the back seat. Davisson stated that he photographed the inside of the

trunk and that the officers found they could reach into the part of the trunk where the package had been placed through a gap behind the back seat. Davisson testified further that a week before trial he and the other officers had experimented with reaching an arm through the opening and placing an object in the trunk in the same spot where the marijuana had been found.

Ron Askins, who sold appellant the car in early 1991, testified that when he originally looked at it to consider fixing it up several months before selling it, there was nothing in the trunk. Fred Askins, who owned the car prior to Ron, testified that he did not recall anything being in the trunk before he sold it.

Deputy William Erwin, Jr., K–9 officer for the Wood County Sheriff's Department, testified that he walked the dog around appellant's car two times and the dog indicated toward the trunk both times. He told Sergeant Russell he was confident enough in the dog's response to get a search warrant. Erwin typed up the affidavit and went to the judge's home to have the warrant signed. When they returned and opened the trunk there was a strong odor of marijuana. The trunk was empty except for a spare tire and a "lump" covered with a towel, which turned out to be a plastic bag containing what appeared to be marijuana.

Sergeant Russell testified as to the events of May 30 and 31, 1991, as summarized above. He testified further that when he arrived at the lot where the car had been towed, the K–9 unit had already been there. He testified that he suggested that they get a search warrant, which they did. When they returned to the car and pried the trunk open, he noticed a strong odor of marijuana. He saw a white towel covering something in the back of the trunk. When the towel was removed, he saw a white plastic bag containing what appeared to be marijuana. Russell removed the bag, marked it and sealed it and took it to the lab to be analyzed. Russell also described the officer's experiment with gaining access to the trunk through the boot behind the back seat.

Larry Bockbrader, an auxiliary for the sheriff's department, testified that on May 30, 1991, he was riding with Deputy Erwin. He went with Erwin and watched as the dog sniffed the car and indicated on the trunk. He watched as the trunk was pried open and saw a "little lump" wrapped in a towel. Under the towel was a white plastic bag which contained another plastic bag with "the contents."

John Olenik, a latent fingerprint examiner with the Ohio Bureau of Criminal Identification and Investigation, testified that he examined a white plastic bag for prints. He found only one print and it did not match appellant's. Scott Dobranski, Ohio Bureau of Criminal Identification and Investigation, testified that he weighed and tested the substance found in appellant's trunk and stated that it was marijuana in greater than bulk amount.

The state rested and the defense moved for a judgment of acquittal, which was denied. The defense called Anthony Thompson, appellant's brother-in-law, who testified that appellant's car had been parked in their mother's lot for a few months. He stated that the car eventually was towed into the garage which was not always locked. He testified that he had never seen anyone drive appellant's car before May 30, 1991.

Daryl McKenzie, who worked for appellant's car cleaning business, testified that he was with appellant when he drove to Hoytville on May 30, 1991. He stated that before they went to Hoytville he helped appellant wash and clean out the car but did not open the trunk.

Wayne Williams, appellant's neighbor, testified that he had installed a new ignition switch for appellant because appellant said he had lost the keys for the ignition, doors and trunk.

Appellant testified as to the circumstances surrounding his purchase of the 1968 Chevy and as to the events of May 30, 1991. Appellant stated that he had a key to the trunk when he took possession of the car in January 1991. He tried to start the car once around Easter when it was parked on his mother's property but it would not run so he left the car with the keys in it. He stated that the last time he looked in the trunk was a few days after the car was towed to his mother's home in January. When he was shown photos of the inside of the trunk taken by the police, appellant stated that he had never seen the spare tire in the pictures and that the tire did not come with the car. Appellant did not discover that the car keys were missing until May 29, 1991, when he intended to fix the car. He asked a friend to make a new set of keys but when his friend said that he could not do it, appellant decided to install a new ignition switch. Appellant got the car in running order on May 30, 1991 and cleaned it thoroughly inside and out. That evening he and several friends drove to the Hoytville Tavern, where they stayed for a few hours. Shortly after they left and headed home, the Hoytville Police pulled him over and cited him for having illegal license plates. Appellant stated that he was told he could not drive his car since the plates were illegal and that it would be impounded until he could present the title, registration and proper plates. The following day, appellant obtained the title and temporary tags for the car. Appellant then went to the Wood County Sheriff's Department, where he was told about the marijuana found in the trunk. Appellant denied knowledge of the marijuana and said he did not know that you could gain access to the trunk through the boot behind the back seat. Appellant denied putting the marijuana in his car and denied knowing it was there or who put it there.

At the conclusion of testimony, the defense moved for a judgment of acquittal, which was denied. The jury returned a verdict finding appellant guilty of

trafficking in marijuana and of having been previously convicted of a felony drug offense. On February 27, 1992, appellant was sentenced. He filed a timely notice of appeal.

Appellant's two assignments of error will be addressed in reverse order. In his second assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress evidence obtained as a result of the search of his car. Appellant argues that using the dog to sniff the car was a warrantless search and that without the use of the dog, there was no other justification for the search warrant which was issued. Appellant argues that he had a reasonable expectation that the contents of his trunk would be safe from governmental intrusion. Appellant also argues that his car was impounded unlawfully and any evidence obtained as a result was tainted and should not have been used to support a search warrant. Appellant further claims that "the stop, citation, impoundment and search were all part of a coordinated criminal investigation using the fictitious plate as a *pretext* for the search of the vehicle of a citizen who is an object of police suspicion because he was Black and had a police record." Appellee responds that, while having a K–9 unit sniff appellant's car may have constituted a search, such a search would not be unreasonable.

In determining whether the trial court properly denied appellant's motion to suppress, we must ascertain whether the use of the dog to sniff the car constituted a search. While this case is not one of first impression in Ohio, it comes very close to being so.

In *State v. Elkins* (1976), 47 Ohio App.2d 307, 1 O.O.3d 380, 354 N.E.2d 716, the Court of Appeals for Franklin County held that using a dog to sniff the air around a package constitutes a search. In *Elkins,* a trained dog was used to sniff a package held at a parcel delivery service after federal agents received an anonymous tip concerning the package. After the dog indicated that there were drugs in the parcel, the agents obtained a search warrant and found twenty-one kilos of marijuana in the box. *Elkins* reasoned that the trained dog was a "sophisticated device" which was used to detect something that was hidden from human senses and concluded that no real distinction could be drawn between the use of a dog's nose which registers a smell a human cannot perceive and an electronic instrument used to eavesdrop which has been found to constitute a search. See *Katz, infra. Elkins* found, however, that the use of the dog to indicate the presence of marijuana did not constitute an unreasonable search. In explaining its conclusion, *Elkins* reasoned that any intrusion which occurred consisted merely of sniffing the air around the package and an innocent person would not likely object to a package, placed in transit via a common carrier, being sniffed by a trained dog.

Since *Elkins* appears to be the extent of Ohio case law on this question, it is necessary to examine federal court decisions on the issue of the constitutionality of canine sniffs. Prior to 1967, the United States Supreme Court had taken the position that a physical intrusion of an enclosure must occur before there could be an illegal search. That theory was repudiated, however, in *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, when the Supreme Court adopted a two-part test to determine whether a search—that is, a governmental invasion of a person's privacy—has occurred. First, the individual must have exhibited an actual subjective expectation of privacy. *Id.* at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 587. Second, society must be prepared to recognize that expectation as objectively reasonable. *Id.* Items exposed to the public (*id.* at 351, 88 S.Ct. at 510, 19 L.Ed.2d at 581), abandoned (see *Abel v. United States* [1960], 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668, 687), or obtained by consent (see *United States v. Matlock* [1974], 415 U.S. 164, 177, 94 S.Ct. 988, 996, 39 L.Ed.2d 242, 253), for example, are not protected because an individual has not maintained a reasonable expectation of privacy in those items. The degree of intrusiveness involved in the government action and the information obtained were also relevant considerations in determining whether a search had occurred. Before the United States Supreme Court addressed the issue of the use of dogs to perform sniff tests for drugs in 1983, a few courts held that reliance upon trained dogs to detect that which a law enforcement officer could not discover by his own sense of smell constituted a search (see, *e.g., Jones v. Latexo Indep. School Dist.* [E.D.Tex.1980], 499 F.Supp. 223, wherein the use of a dog to detect which public school students had drugs was a search because the dog "was able to detect odors completely outside the range of the human sense of smell" and "this replaced, rather than enhanced, the perceptive abilities of school officials" and thus was more like using electronic bugging or x-rays than a flashlight.) Most courts, however, have either held or assumed otherwise (*e.g., United States v. McCranie* [C.A. 10, 1983], 703 F.2d 1213; *United States v. Waltzer* [C.A. 2, 1982], 682 F.2d 370; *State v. Morrow* [1981], 128 Ariz. 309, 625 P.2d 898; *People v. Mayberry* [1982], 31 Cal.3d 335, 182 Cal.Rptr. 617, 644 P.2d 810.) One reason for not calling canine sniffs a search which was given for a limited time was that the practice is essentially no different from the officer using his own sense of smell. This reasoning was applied in *United States v. Bronstein* (C.A. 2, 1975), 521 F.2d 459, wherein the court asserted that if the police had smelled the drugs themselves, there would be no serious contention that their sniffing in the area in question was an unlawful search and that the use of a dog's sense of smell should not render the situation constitutionally suspect. The "plain smell," however, was seen as stretching the imagination and the canine sniff issue was eventually resolved by the United States Supreme Court in *United States v. Place* (1983), 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110. In *Place,* the Supreme Court held

that, while a ninety-minute dispossession of a person's luggage was an illegal seizure, the subsequent use of a dog to sniff the luggage did not constitute a search. In reaching its conclusion, the court emphasized the unique nature of the investigative technique, which disclosed only criminality and nothing else:

"We have affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment. * * * A 'canine sniff' by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

"In these respects, the canine sniff is *sui generis*. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a 'search' within the meaning of the Fourth Amendment." 462 U.S. at 707, 103 S.Ct. at 2644–2645, 77 L.Ed.2d at 120–121.

Federal courts have since used *Place* as the starting point for any analysis of the Fourth Amendment principles relating to canine drug sniffing. In *United States v. Germosen–Garcia* (D.Kan.1989), 712 F.Supp. 862, the court held that the use of a drug-sniffing dog at an airport to detect the presence of illegal narcotics was not a search under the Fourth Amendment. More recently, the United States Court of Appeals in *United States v. Rodriguez–Morales* (C.A.1, 1991), 929 F.2d 780, held that the canine sniff of the exterior of a vehicle legitimately in police custody is not a search within the meaning of the Fourth Amendment and that subjecting the exterior of the car to the "olfactory genesis" of a drug detection dog does not violate the owner's Fourth Amendment rights. Further, in *United States v. Morales–Zamora* (C.A.10, 1990), 914 F.2d 200, the court held that a canine sniff of a vehicle already lawfully detained by the police is not a search within the meaning of the Fourth Amendment.

The federal cases cited above are unequivocal in finding that there is no intrusion on legitimate privacy interests and that there is no "search" where the

information revealed by means of a canine sniff is limited to contraband items. While we agree with the *Elkins* court's rationale in finding that the "search" in that particular case was reasonable, we disagree with the initial finding that the canine sniff was actually a search.

Upon consideration of the evidence that was presented at the hearing on the motion to suppress and the law as set forth above, this court finds that the use of the dog to sniff appellant's car did not constitute a Fourth Amendment search. The drug sniffing dog was used to detect the presence of illegal drugs only and the car was lawfully detained due to having improper plates as well as appellant's failure to produce proper registration. Under these circumstances, no reasonable expectation of privacy was violated. The use of the dog was not a warrantless search and the information acquired with the assistance of the dog was therefore properly used as a factual basis for the search warrant. Accordingly, we find that the trial court did not err in denying appellant's motion to suppress and appellant's second assignment of error is found not well taken.

 In his first assignment of error, appellant asserts that the trial court erred when it overruled his motions for acquittal. Appellant argues that the state presented only circumstantial evidence against him and that such evidence was insufficient for a finding of guilt. Appellee responds that the trial court properly overruled appellant's motions for acquittal because there was sufficient evidence for the case to go to the jury. The arguments of appellant and appellee are based almost entirely on their interpretation of the decision in *State v. Kulig* (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897, which asserted that where circumstantial evidence alone is relied upon to prove an element essential to a finding of guilt, it must be consistent only with the theory of guilt and irreconcilable with any reasonable theory of innocence. Appellant and appellee both failed to note, however, that the Ohio Supreme Court overruled *Kulig* in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, wherein the court joined the many other federal and state courts which no longer make a distinction between the reliability of circumstantial and direct evidence and held that "when the state relies on circumstantial evidence to prove an element of the offense charged, there is no requirement that the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction." *Id.* at 273, 574 N.E.2d at 503. After a thorough consideration of the record and the law as set forth above, this court finds that the trial court did not err in denying appellant's motions for judgment of acquittal. Accordingly, appellant's first assignment of error is found not well taken.

The judgment of the Wood County Court of Common Pleas is affirmed.

*Judgment affirmed.*

GLASSER, P.J., concurs.

MELVIN L. RESNICK, J., concurs in judgment only.