**The STATE of Ohio, Appellee,**

v.

**WALDROUP, Appellant.**

[Cite as *State v. Waldroup* (1995), 100 Ohio App.3d 508.]

Court of Appeals of Ohio,
Twelfth District, Preble County.

No. CA94–07–018.

Decided Jan. 30, 1995.

*Rebecca J. Ferguson,* Preble County Prosecuting Attorney, and *M. Gregory Greathouse,* Assistant Prosecuting Attorney, for appellee.

*John H. Rion & Associates* and *John H. Rion,* for appellant.

KOEHLER, Judge.

Appellant, Larry Waldroup, appeals from his conviction in the Preble County Court of Common Pleas following a no contest plea on one count of trafficking in marijuana. Appellant alleges that the trial court erred in denying his motion to suppress the evidence against him, which was the result of an illegal search and seizure. Based upon our finding that there is substantial evidence in the record to support the trial court's denial of the motion, we affirm.

On the morning of October 6, 1993, Ohio State Highway Patrol Trooper Shaun Smart observed appellant's vehicle, a white Oldsmobile with New Mexico plates, traveling eastbound in the right lane of Interstate 70 in Preble County. Trooper Smart was trying to catch up with another vehicle to check its registration and was in the left lane going eighty-five to ninety m.p.h. When Trooper Smart's cruiser was seventy-five to eighty feet behind appellant's car, appellant made a

sudden lane change to the left lane without signaling. As Trooper Smart came up behind appellant, appellant stayed in the left lane for a short time, then started to move over to the right, behind a tractor-trailer. Appellant's car straddled the line between the right and left lanes and was also observed by Trooper Smart to be following the trailer too closely. Appellant then moved back over to the left lane, went around the trailer, and returned to the right lane, signaling this time.

Trooper Smart went up ahead, caught up with the other vehicle, and decided not to stop it. He then pulled into a cross area and waited for appellant's vehicle to go by. When Trooper Smart got behind appellant the second time, appellant's vehicle made another right-to-left lane change without signaling, and crossed the right lane line twice. Trooper Smart then pulled appellant over and informed him that he had been stopped for improper lane changes and following too closely.

Trooper Smart testified at the suppression hearing that appellant appeared more nervous than usual for a traffic stop. Although it was a cool day, appellant was sweating freely down the side of his face and neck, and "his heart was visibly beating through his shirt." Appellant's hand shook visibly as he handed over his license and the rental agreement for the car. When the trooper asked appellant about his destination, he appeared flustered, then said he was driving to Rhode Island to visit his mother. Trooper Smart noted that the car had only been rented for seven days for the round trip from New Mexico to Rhode Island, a drive which the trooper estimated would take about two and one-half days each way. When Trooper Smart asked appellant why he didn't fly instead, appellant said he wanted to see the country. The officer observed that the right front floor of the vehicle was littered with fast food wrappers and candy wrappers. Appellant also had a Class A commercial driver's license, but indicated to the officer that he was a chiropractor. Although this later proved to be true, Trooper Smart believed at the time that appellant was not being honest with him. Appellant told the officer that he was from Farmington, New Mexico, part of the Four Corners area which is known for narcotics distribution. Trooper Smart testified that the observations he made during the initial traffic stop indicated to him that there was a possibility that appellant was trafficking narcotics across the country.

Trooper Smart called for a drug canine to confirm or deny his suspicion. Trooper Jeff Wright arrived with the dog about fourteen minutes into the initial traffic stop. On the first walk around appellant's car, the dog showed interest in the trunk area, but did not scratch or "alert" on the trunk. Trooper Wright put the dog back in the cruiser for a minute, then took him out and walked him around appellant's car again. This time, the dog alerted at the trunk of appellant's car. The officers opened the trunk and saw a ten-gallon water cooler

which had been caulked shut at the top. The officers broke open the caulking and found nineteen one-pound zip lock baggies containing what was later found to be marijuana. Appellant was then placed under arrest.

Appellant raises four assignments of error on appeal:

Assignment of Error No. 1:

"The evidence must be suppressed because the stop was pretextual."

Assignment of Error No. 2:

"Even if the initial stop were valid, the subsequent detention of appellant while waiting for the drug sniffing dog was improper, because the officer could not have reasonably suspected that the car contained narcotics."

Assignment of Error No. 3:

"By calling the dog and having it sniff appellant's car, the officers conducted a search for which they first needed, and did not have probable cause."

Assignment of Error No. 4:

"The dog's 'alert,' combined with the other circumstances which first caused the officer to become suspicious of drug activity, did not amount to probable cause to search the car."

In his first assignment of error, appellant alleges that the traffic stop was a pretext to investigate appellant based upon the officer's suspicion of the New Mexico plates. Appellant concludes that since the trooper waited to stop his car for a "picayune" offense, this indicates that the traffic violation was not the real reason for the stop. We find that there is competent, credible evidence to support the trial court's conclusion that a reasonable officer would have made the stop under the same or similar circumstances.

Before stopping a vehicle, an officer must have a reasonable suspicion based upon specific and articulable facts that the occupant is or has been engaged in criminal activity. See *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 905–906. Thus, if the specific and articulable facts indicate to an officer that a driver may be committing a criminal act, including a traffic law violation, the officer is justified in making an investigative stop. See, *e.g., State v. Evans* (1993), 67 Ohio St.3d 405, 412, 618 N.E.2d 162, 168–169. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 178, 524 N.E.2d 489, 490. The test for determining if a traffic stop is pretextual is "not whether the officer *could* have validly conducted the search but whether, under the same circumstances, a reasonable officer *would* have conducted the search without the invalid purpose."

*State v. Roaden* (1994), 98 Ohio App.3d 500, 503, 648 N.E.2d 916, 918, citing *State v. Spencer* (1991), 75 Ohio App.3d 581, 585, 600 N.E.2d 335, 337.

 In this case, appellant made a sudden right-to-left lane change into Trooper Smart's lane of travel as the trooper was pursuing another vehicle at a high rate of speed. Appellant did not signal the lane change even though the trooper was coming up behind him and he had just passed several Highway Patrol cruisers stationary on the median. It was after a second unsignaled lane change that the trooper pulled appellant over and advised appellant that he had been stopped for traffic violations. Appellant was later cited for the violations. Trooper Smart's testimony indicates that his suspicions as to drug trafficking were raised based upon his conversation with and observations of appellant and his vehicle after the traffic stop was initiated. The record supports the trial court's conclusion that Trooper Smart had specific and articulable reasons to believe that appellant was violating traffic laws and that the stop was not pretextual. Appellant's first assignment of error is therefore overruled.

In appellant's second assignment of error, he argues that even if the initial stop was valid, the subsequent detention of appellant for the drug dog was not based upon a reasonable suspicion that the vehicle contained narcotics, and was therefore improper. We disagree.

 If during the scope of the initial stop an officer encounters additional specific and articulable facts which give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may detain the vehicle and driver for as long as the new articulable and reasonable suspicion continues. *State v. Myers* (1990), 63 Ohio App.3d 765, 771, 580 N.E.2d 61, 64–65. In this case, Trooper Smart observed appellant's unusual demeanor for a traffic stop. He noted the short-term car rental for a cross-country round trip allegedly to visit appellant's mother. The car was littered with food and candy wrappers. Appellant said that he was from an area of New Mexico which is known for drug trafficking. The trooper doubted appellant's truthfulness when he said he was a chiropractor but had a Class A commercial driver's license.

Trooper Smart testified that his training, coupled with his observations at the scene, indicated that it was possible that appellant was trafficking drugs across country. The evidence supports the trial court's conclusion that there were specific and articulable facts giving rise to a reasonable suspicion of criminal activity beyond the reason for the initial stop. Since the detention, if any, beyond what was necessary to complete the initial traffic stop, was justifiable, appellant's second assignment of error is overruled.

In appellant's third assignment of error, he argues that the dog sniff of his car constituted a search for which the officers lacked probable cause. Appellant

acknowledges that in *United States v. Place* (1983), 462 U.S. 696, 707, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110, 120–121, the United States Supreme Court held that a canine sniff is not a search under the Fourth Amendment. However, appellant argues that it is not clear whether a dog sniff is a search under the Ohio Constitution, citing the opposing cases of *State v. Riley* (1993), 88 Ohio App.3d 468, 624 N.E.2d 302, and *State v. Elkins* (1976), 47 Ohio App.2d 307, 1 O.O.3d 380, 354 N.E.2d 716.

■ The Ohio Tenth District Court of Appeals based its holding in *Elkins* on the Fourth Amendment to the United States Constitution, not the Ohio Constitution. *Elkins* was decided prior to the United States Supreme Court decision in *Place,* and the *Place* decision undermines the precedential value of *Elkins.* In *State v. Palicki* (1994), 97 Ohio App.3d 175, 646 N.E.2d 494, the Ohio Sixth District Court of Appeals said:

"[T]his court previously analyzed the holding in *State v. Elkins* and rejected the finding that a dog sniff is a search. *State v. Riley* (1993), 88 Ohio App.3d at 476, 624 N.E.2d at 307. We therefore conclude that the use of the trained dog to sniff the car driven by appellant was not a search under the Constitution of the United States or under the Constitution of the State of Ohio." *Palicki* at 181–182, 646 N.E.2d at 499.

We agree that a drug sniffing dog used to detect the presence of illegal drugs in a lawfully detained vehicle does not violate a reasonable expectation of privacy and is not a search under the Ohio Constitution. Appellant's third assignment of error is overruled.

■ In appellant's fourth assignment of error, he argues that the dog's "alert," combined with the other circumstances of the stop, did not amount to probable cause to search appellant's car. We find that the facts support the trial court's conclusion that probable cause existed to search the trunk of appellant's vehicle and open the container found therein.

■ The automobile exception allows police to conduct a warrantless search of a vehicle where they have probable cause to believe that it contains contraband and where exigent circumstances necessitate a search or seizure. *State v. Mills* (1992), 62 Ohio St.3d 357, 367, 582 N.E.2d 972, 982–983. An automobile's mobility often creates exigent circumstances and "is the traditional justification for this exception to the Fourth Amendment's warrant requirement." *Id.* at 367, 582 N.E.2d at 982. Therefore, in this case, if the officers had probable cause, the warrantless search of appellant's trunk was constitutional.

As previously discussed, Trooper Smart called for the drug canine based upon a reasonable and articulable suspicion of illegal activity other than that which triggered the initial traffic stop. When the dog indicated that drugs were

present in the trunk of appellant's vehicle, the troopers had probable cause to search the trunk and the container they found in the trunk. After the dog alerted, appellant was aware of the police interest in the contents of his car trunk and might have disposed of incriminating evidence before a search warrant could be obtained. Therefore, appellant's fourth assignment of error is overruled.

*Judgment affirmed.*

WALSH, P.J., and WILLIAM W. YOUNG, J., concur.