OPINION
Defendant-appellant, Leonard B. Griffith, appeals a decision of the Madison County Court of Common Pleas denying his motion to suppress evidence. We affirm.
On April 24, 1997, appellant was indicted by a Madison County Grand Jury and charged with possession of marijuana in an amount greater than twenty thousand grams, a second-degree felony in violation of R.C. 2925.11(C)(3)(f). On June 23, 1997, appellant filed a motion to suppress evidence which was found in the search of a truck that he was driving. A hearing on appellant's motion to suppress was held on August 6, 1997.
At the suppression hearing, the state presented the testimony of Trooper Matthew Warren and Trooper Sean Davis, members of the drug interdiction unit of the Ohio State Highway Patrol. According to this testimony, on the morning of April 9, 1997, Trooper Warren was patrolling Interstate 70 in Madison County when he observed appellant driving a pick-up truck in excess of the posted speed limit of sixty-five m.p.h. Trooper Warren activated his radar and clocked the truck travelling at seventy-three m.p.h. At approximately 10:52 a.m., Trooper Warren stopped appellant for the speeding violation.
When Trooper Warren stopped behind the truck, he observed that the truck had an Arizona license plate on the rear that appeared to be expired and a temporary Arizona license plate taped to the rear window. Trooper Warren approached the driver's side of the truck and informed appellant that he had been pulled over for speeding. Trooper Warren asked appellant for his driver's license and the registration for the truck. Appellant responded that he did not have the registration because the truck belonged to his girlfriend. After dropping his wallet twice and with his hands visibly shaking, appellant finally produced an Arizona driver's license from his wallet.
Trooper Warren then asked appellant to accompany him to his patrol cruiser while he checked appellant's driver's license and issued him a citation for speeding. While appellant sat in the back of the patrol cruiser, Trooper Warren radioed his patrol post and requested that they check appellant's driver's license. The patrol post informed Trooper Warren that appellant's driver's license was suspended. When asked by Trooper Warren, appellant stated that he did not know why the license was suspended.
Trooper Warren then informed appellant that he wanted to speak with the passenger that was in the truck to determine whether the passenger had a valid driver's license. Trooper Warren asked appellant the passenger's name and appellant responded that his first name was Jose but he did not know his last name. Trooper Warren went to the truck and learned that the passenger's name was Jose Franco. Trooper Warren informed Franco that appellant had a suspended license and asked Franco whether he had a valid driver's license. Franco responded that he did not have a driver's license nor did he have any other type of identification.
Trooper Warren returned to the patrol cruiser and heard on the radio that Trooper Davis and his canine unit were less than a mile away. Trooper Warren radioed Trooper Davis for assistance. While waiting for Trooper Davis to arrive, Trooper Warren requested that the patrol post check appellant's criminal history and continued to fill out appellant's citations for speeding and driving with a suspended license. Although appellant denied that he had ever been arrested, the patrol post informed Trooper Warren that appellant had previously been arrested for drug possession.
At approximately 11:02 a.m., Trooper Davis arrived at the scene. Upon arrival, he briefly discussed the situation with Trooper Warren and then approached Franco, who was still in the truck, in another attempt to obtain a driver's license or other identification from him. While Trooper Davis was speaking with Franco, Trooper Warren remained in the patrol cruiser with appellant and continued to fill out appellant's citations.
Franco failed to provide Trooper Davis with any valid identification and provided conflicting information about his identity and their destination. Franco also stated that he did not know appellant's last name. Trooper Davis returned to the patrol cruiser and informed Trooper Warren of his conversation with Franco and his belief that Franco was being deceptive. The troopers then decided that Trooper Davis would walk his dog around appellant's truck to check for narcotics. The dog alerted to the odor of narcotics at the rear of the truck by the tailgate and attempted to go under the truck. The troopers subsequently searched the truck and discovered a false bed that contained a large amount of marijuana.
Based upon the evidence presented at the suppression hearing, the trial court found that the traffic stop, the detention of appellant and the search of the truck were proper. Accordingly, the trial court denied appellant's motion to suppress the marijuana discovered in the truck. On August 15, 1997, appellant pled no contest to an amended charge of possessing more than five thousand but less than twenty thousand grams of marijuana, a third-degree felony in violation of R.C. 2925.11(C)(3)(e). Appellant was subsequently sentenced to five years of imprisonment.
In his sole assignment of error on appeal, appellant argues that the trial court erred by denying his motion to suppress. In reviewing the trial court's decision, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. French (1995), 104 Ohio App.3d 740, 747. However, an appellate court independently reviews a trial court's legal determination that police had a reasonable suspicion to stop and detain a motorist, and/or probable cause to arrest. Ornelas v. United States (1996), 517 U.S. 690, 116 S.Ct. 1657; State v. Curry (1994), 95 Ohio App.3d 93, 96.
Appellant first argues that Trooper Warren lacked justification to stop the truck. The Fourth Amendment to the United States Constitution gives people the right "to be secure * * * against unreasonable searches and seizures." "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution * * *." Dayton v. Erickson (1996), 76 Ohio St.3d 3, syllabus. See, also, State v. Wilhelm (1998), 81 Ohio St.3d 444. A police officer's personal observation of a traffic violation provides probable cause to stop a motor vehicle. Whren v. United States (1996), U.S., 116 S.Ct. 1769; Dayton at 11.
In the present case, Trooper Warren testified that he clocked appellant driving a truck that was traveling seventy-three m.p.h. in a sixty-five m.p.h. zone. Thus, Trooper Warren observed a traffic violation and had probable cause to stop the truck being driven by appellant for a speeding violation.
Appellant next argues that Trooper Warren and Trooper Davis lacked justification to detain appellant while the dog sniffed the truck for narcotics. Initially, we recognize that "a drug sniffing dog used to detect the presence of illegal drugs in a lawfully detained vehicle does not violate a reasonable expectation of privacy and is not a search." State v. Waldroup (1995), 100 Ohio App.3d 508, 514. See, generally, United States v. Place (1983), 462 U.S. 696, 707, 103 S.Ct. 2637, 2644-2645. Thus, "if a vehicle is lawfully detained, an officer does not need a reasonable suspicion of drug-related activity in order to request that a drug dog be brought to the scene or to conduct a dog sniff of the vehicle." State v. Carlson (1995), 102 Ohio App.3d 585,594. Accordingly, the determinative issue in the present case is whether appellant and the truck were lawfully detained when the dog sniff was conducted.
An investigative stop may not last longer than is necessary to effectuate the purpose of the stop. Florida v. Royer (1983),460 U.S. 491, 103 S.Ct. 1319. When conducting an investigative stop for a traffic violation, a police officer may detain a motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. Carlson at 598, citing State v. Keathley (1988), 55 Ohio App.3d 130,131-132 and Delaware v. Prouse (1979), 440 U.S. 648, 659,99 S.Ct. 1391. Moreover, if a police officer, during the initial detention of a motorist, ascertains additional specific and articulable facts which give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may further detain the motorist and conduct a more in-depth investigation. State v. Robinette (1997), 80 Ohio St.3d 234,241. The continued detention does not violate theFourth Amendment as long as the continued detention is objectively justified by the circumstances. Id.
In the present case, Trooper Davis arrived at the scene approximately ten minutes after appellant was stopped and the dog sniff was conducted after Davis had brief conversations with Franco and Trooper Warren. Trooper Warren's testimony indicates that he was still working on appellant's citation for speeding when Trooper Davis went to speak with Franco. However, the record does not reveal whether Trooper Warren had completed issuing appellant a speeding citation, the original purpose for the stop, when the dog sniff was actually conducted. However, even assuming that Trooper Warren had completed issuing the speeding citation, we find that Trooper Warren was objectively justified, under the circumstances, in further detaining appellant long enough to conduct the dog sniff.
During the initial detention of appellant for speeding, Trooper Warren discovered that appellant did not have the registration for the truck, was driving with a suspended license and had previously been arrested for possessing drugs. Further, Trooper Warren believed that appellant was being deceptive because he lied about the status of his driver's license and his criminal history, appeared especially nervous, and claimed that he did not know Franco's last name even though they had travelled together from Arizona. Trooper Warren also believed that Franco was being deceptive because he claimed that he did not have a driver's license or any other type of identification, did not know appellant's last name, and provided conflicting information about his identity and their destination. Based upon these facts, we find that even if the purpose for the initial detention had been completed, Officer Warren learned of new facts that constituted a reasonable suspicion of criminal activity in addition to speeding that warranted further detention of appellant for the brief amount of time that it took to conduct the dog sniff. See Carlson, 102 Ohio App.3d at 600; State v. Napier (May 27, 1998), Medina App. No. 2671-M, unreported. Accordingly, we conclude that appellant and the truck were lawfully detained when the dog sniff was conducted.
Appellant finally argues that the troopers lacked probable cause to search the truck. We have previously held that if a trained dog alerts to the presence of drugs in a lawfully detained vehicle, police have probable cause to search the vehicle for drugs. French, 104 Ohio App.3d at 749; Waldroup,100 Ohio App. 3d at 514.
In the present case, when Trooper Davis walked the trained drug dog around the truck driven by appellant, the dog alerted to the odor of narcotics at the rear of the truck by the tailgate and attempted to go under the truck. Accordingly, the troopers had probable cause to search the truck for narcotics.
Based upon the foregoing, we conclude that the stop of the truck driven by appellant, the detention of appellant while the dog sniff was conducted and the search of the truck for narcotics were proper. Accordingly, the trial court did not err by denying appellant's motion to suppress. Appellant's sole assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.