[Cite as *State v. Travis*, 2013-Ohio-581.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98420**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## THEODORE TRAVIS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-559172

**BEFORE:** Keough, J., S. Gallagher, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** February 21, 2013

**ATTORNEY FOR APPELLANT**

John T. Castele
614 West Superior Avenue, Suite 1310
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:   Holly Welsh
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Theodore Travis, appeals the trial court's denial of his motion to suppress. For the reasons that follow, we affirm.

{¶2} In January 2012, Travis was charged with carrying a concealed weapon, having a weapon while under disability, and improper handling of a firearm in a motor vehicle. Travis moved to suppress evidence, i.e., the firearm that was recovered during a traffic stop. Following a hearing, the trial court denied his motion to suppress. Thereafter, Travis pled no contest to the charges and was sentenced to one year in prison.

{¶3} Travis appeals, contending in his sole assignment of error that the trial court erred in denying his motion to suppress because there was a lack of reasonable and articulable suspicion of criminal activity and because the trial court's decision was not based on competent and credible evidence.

{¶4} A motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate

court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Id.*

{¶5} In this case, Officer Jeffrey Yasenchack and his partner, Officer Donald Kochak, were on routine basic patrol around 9:30 p.m. when they observed a van shortcutting through the McDonald's parking lot off St. Clair and East 152nd Streets. They began following the van and when the driver failed to use his turn signal when turning onto Yorick Avenue, the officers effectuated a traffic stop of the van. According to Yasenchack, the area where the stop took place is a high crime area.

{¶6} Yasenchack testified that as he approached the driver's side of the van, he observed the driver of the vehicle, later identified as Travis, "moving about." When he reached the driver's window, he observed "the driver shoving something into his waistband, and it seemed like a large object[,] just [by] the way he was shoving it down into his pants." He then advised Travis the basis for the stop, and requested his driver's license. Yasenchack testified that when he asked Travis for his license, he "did not have it ready"; rather, Travis had to retrieve his license. This fact made the officer a little more suspicious regarding the movements previously observed. According to Yasenchack, he had Travis exit the vehicle for officer safety and because of the movements Travis made to his waistband.

{¶7} As Travis shifted to exit the vehicle, Yasenchack observed the outline of a gun from the right leg of his jeans, which the officer described as "skinny jeans." When

he noticed the gun, Yasenchack quickly turned Travis around, handcuffed and patted him down, and retrieved a loaded firearm from Travis's waistband.

{¶8} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them, per se, unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In *Terry v. Ohio*, the United States Supreme Court explained that the Fourth Amendment allows a police officer to stop and detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that the person stopped has committed or is committing a crime. *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 2720 L.Ed.2d 889 (1968); *see also State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991).

{¶9} A traffic offense meets the requirements under *Terry*, constituting reasonable grounds for an investigative stop. *State v. Davenport*, 8th Dist. No. 83487, 2004-Ohio-5020, ¶ 16, citing *State v. Carlson*, 102 Ohio App.3d 585, 596, 657 N.E.2d 591 (9th Dist.1995). However, the scope of a detention "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

{¶10} An officer may expand the scope of the stop and may continue to detain the vehicle without infringing on the Fourth Amendment "if during the scope of the initial stop an officer encounters additional specific and articulable facts which give rise to a

reasonable suspicion of criminal activity beyond that which prompted the stop,* * * for as long as the new articulable and reasonable suspicion continues." *State v. Waldroup*, 100 Ohio App.3d 508, 513, 654 N.E.2d 390 (12th Dist.1995).

{¶11}  Although Travis concedes on appeal that the police officers may have had probable cause justifying the stop of his vehicle, he asserts that the officers had no reasonable or articulable suspicion to believe he was engaged in any further criminal activity.

{¶12} In denying Travis's motion to suppress, the trial court applied the factors outlined by the Ohio Supreme Court in *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), finding that the "officer's observations were consistent with the defendant possibly hiding something."

{¶13} The trial court's finding is supported by competent and credible evidence; thus, under our appellate review, we must accept the finding as true.  The evidence shows that as Officer Yasenchack approached the driver's side of the van, he could see the driver making movements and that he could see Travis making movements toward his waistband consistent with putting something down his pants.  When the officer determined that the movements were not related to retrieving his driver's license, he became more suspicious and requested Travis to exit the vehicle.  When Travis then began shifting to exit the vehicle, Officer Yasenchack observed the outline of a gun in his "skinny jeans" on the right side of his leg.  Accordingly, competent and credible evidence exists supporting the trial court's denial of Travis's motion to suppress.  The

observations by Officer Yasenchack created reasonable and articulable suspicion that Travis was engaged in further criminal activity, thus warranting the expansion of the scope of the initial traffic stop and Travis's further detention.

**{¶14}** Moreover, the United States Supreme Court has recognized that a police officer may order a driver or passenger to exit his vehicle if properly stopped for a traffic violation, even if the officer does not have reasonable suspicion of criminal activity. *See Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L. Ed.2d 331 (1977). Thus, even if Travis had not been making any furtive movements or gestures, thereby alerting Officer Yasenchack to believe that Travis was concealing something, the officer was justified in ordering him to exit the vehicle. *See State v. Hoskins*, 8th Dist. No. 80384, 2002-Ohio-3451.

**{¶15}** Accordingly, the trial court did not err in denying Travis's motion to suppress. The sole assignment of error is overruled.

**{¶16}** Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

SEAN C. GALLAGHER, P.J., CONCURS (SEE ATTACHED CONCURRING OPINION); and
KENNETH A. ROCCO, J., CONCURS WITH MAJORITY OPINION AND CONCURRING OPINION

SEAN C. GALLAGHER, P.J., CONCURRING:

**{¶17}** I concur fully with the judgment and analysis of the majority. Nevertheless, I write separately to address concerns about the reasonable articulable suspicion standard that is now applied to vehicle stops, like here, that were initiated for minor traffic violations. I also write to address concerns about the trial court's reliance, and the prosecutor's reference on appeal, to *State v. Bobo,* 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), as justification for this stop. While *Bobo* is an often-cited case outlining the reasonable particular suspicion standard, a closer read reveals that the facts in *Bobo* did not involve a traffic violation. Bobo was in the passenger seat of a parked auto in a motel parking lot. The factors supporting Bobo's detention, unlike here, had nothing to do with traffic violations. While I have concerns about the reasonable articulable suspicion standard, I nevertheless recognize and continue to adhere to the precedent that intermediary courts are bound to follow.

{¶18} The facts in this case are unremarkable. A motorist commits one or more traffic violations. The police observe those violations. The police stop the motorist. The motorist exhibits some unexplained movement that raises the suspicion of the officers that some other criminal activity is afoot. The officers explain it is a high crime area and it is nighttime and they have recovered plenty of guns from this area in the recent past. The officers ask the motorist to exit the vehicle for their safety, and with that, they immediately see a gun and arrest the motorist.

{¶19} The officers observed Travis shortcutting an intersection and failing to use a turn signal, violations of Cleveland Codified Ordinances 431.41 and 431.14, respectively. There is no question that the officers had probable cause, and therefore also a reasonable articulable suspicion,[1] to stop Travis. The officers' testimony established that they acquired a separate basis for continuing to detain Travis after stopping him for the traffic violations, which then became an investigative stop. The officers articulated a sufficient and reasonable basis for asking Travis to exit the vehicle, resulting in their recovery of the gun and the arrest of Travis.

{¶20} In its own small way, this case is yet another small ripple in the incredible sea of change that has transformed traffic enforcement in Ohio. There has been an increasing blur in the distinction of what is necessary to justify a traffic stop — moving away from probable cause to reasonable suspicion. The ever-relaxing standard in this

---

[1] Obviously where the higher standard of proof is satisfied, the lesser standard of proof is also met.

area of law has largely gone unaddressed, if not unnoticed, by many practitioners and members of the bench. Yet, this change has significant ramifications for Ohio's 7,000,000 licensed drivers and their Fourth Amendment protections.

**{¶21}** In 1996, Ohio courts were struggling with the issue of pretextual stops and whether they were reasonable under the Fourth Amendment. The issue presented was not whether a police officer could legally stop a driver, but whether a reasonable officer would do so under the circumstances. *United States v. Smith*, 799 F.2d 704, 708 (11th Cir.1986). In addressing this issue, the Supreme Court of Ohio held that whether a Fourth Amendment violation occurred for a traffic violation stop depended upon an objective assessment of the officer's actions at the time of the traffic stop, and not upon the officer's actual (subjective) state of mind. *Dayton v. Erickson,* 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996).

**{¶22}** The landmark holding in *Erickson* required officers to establish probable cause of a traffic code violation in order to justify the stop of a motorist for that reason. The court, in *Erickson*, adopted the test outlined in *United States v. Ferguson*, 8 F.3d 385, 391-393 (6th Cir.1993), which held:

> * * * so long as the officer *has probable cause* to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment. * * * We focus not on whether a reasonable officer 'would' have stopped the suspect (even though he had probable cause to believe that a traffic violation had occurred), or whether any officer 'could' have stopped the suspect (because a traffic violation had in fact occurred), but on *whether this particular officer in fact had probable cause to believe that a traffic offense had occurred*, regardless of whether this was the only basis or merely one basis for the stop. *The stop is reasonable if there was probable cause*, and it is irrelevant what else the

officer knew or suspected about the traffic violator at the time of the stop. It is also irrelevant whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop.

"We note that *this probable cause determination*, like all probable cause determinations, is fact-dependent and will turn on what the officer knew at the time he made the stop. Under this test, it is clear that the courts may not determine whether there was *probable cause* by looking at events that occurred after the stop. * * * If the facts known to the officer at the time of the stop were sufficient to constitute *probable cause* to believe that a traffic violation had occurred, a reviewing court may not look at the officer's ordinary routine, or his conduct or conversations that occurred before or after the stop to invalidate the stop as pretextual."

(Emphasis added.) *Erickson*, 76 Ohio St.3d 3, 10-11, quoting *Ferguson* at 391-393.

{¶23} Many felt this bright line rule sanctioned pretextual stops by cloaking them in the legitimacy of traffic enforcement and lamented the fact that minor de minimus offenses, such as "no rear license plate light," a violation under R.C. 4513.05, would now serve as the legitimate basis for stopping motorists. Nevertheless, the decision set a clear bar for police enforcement that, at a minimum, required police to establish the higher probable cause standard. The court in *Erickson* did not include the lesser reasonable articulable suspicion standard as a legitimate basis for justifying a stop based on a traffic violation.

{¶24} Probable cause to arrest an individual (or to stop and cite or warn them for a traffic violation) exists where the facts and circumstances are sufficient to warrant a reasonably prudent person in believing that the individual has committed or is committing an offense. Under this standard, the subjective intentions of the arresting officer are irrelevant in determining the validity of an arrest (or citation). *Gerstein v. Pugh,* 420

U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

{¶25} Reasonable suspicion, on the other hand, requires that the officer, "point to specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether the officer had such reasonable suspicion is evaluated based on the totality of the circumstances surrounding the stop. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus. *See State v. Hicks,* 7th Dist. No. 01 CO 42, 2002-Ohio-3207.

{¶26} In 2008, the Supreme Court of Ohio was asked to resolve an issue that was in conflict in the fifth and third appellate districts; namely, "May a police officer who witnesses a motorist cross a right white edge line and without any further evidence of erratic driving or that the crossing was done in an unsafe manner make a constitutional stop of the motorist?" *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204. This is commonly referred to as a "marked lanes" violation. *See* R.C. 4511.33(A). Unlike determining speeding or red light violations, ascertaining a violation of the valid marked lanes statute is not as clear cut. The statute contains an "interpretive like" passage requiring motorists to stay in their respective lane "as nearly as is practicable * * *." *See* R.C. 4511.33(A)(1). Thus, it was not surprising that differing interpretations of it would emerge from Ohio's various appellate districts. The Ohio Supreme Court ultimately answered the certified question in the affirmative, and

went on to hold that while probable cause would completely justify the stop, the officer need only articulate a reasonable and articulable suspicion that a marked lanes violation had occurred. *Mays*, 2008-Ohio-4539, ¶ 23 ("Just as a fact proven beyond a reasonable doubt has by necessity been proven by a preponderance, an officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop.").

{¶27} The *Mays* court noted that the former and higher probable cause standard "subsumes the latter [reasonable suspicion standard]" and perfunctorily reasoned that the lesser standard would suffice for a traffic stop. The *Mays* court stated that *Erickson* did not hold otherwise. *Id.*

{¶28} Few then, or now, fully appreciated the breadth and significance of the court's decision in *Mays*. *Mays* transformed Ohio traffic enforcement and, whether intended or not, has arguably eroded the protections of the Fourth Amendment afforded Ohio motorists.

{¶29} Over the past five years, the language in *Mays* has worked its way into countless appellate decisions that have nothing to do with marked lane enforcement. Some of these include *State v. Smith*, 4th Dist. No. 12CA3308, 2013-Ohio-114; *State v. Miller*, 5th Dist. No. 2012-CA-25, 2012-Ohio-6147; *State v. Erkins,* 1st Dist. No. C-110675, 2012-Ohio-5372; and *State v. Brandenburg*, 4th Dist. No. 11CA3252, 2012-Ohio-4926.

{¶30}   Notably, the traffic violation in *Erickson* was objectively clear: either the defendant failed to use her turning signal or not.   Conversely, the traffic violation in *Mays* involved an observation that Mays drifted across the white fog line by approximately one tire width on two occasions.   This observation was subject to some debate — was the defendant driving "as nearly as practicable" in the marked lanes or not?   If the Ohio Supreme Court's true intention in *Mays* was to limit application of the lesser "reasonable articulable suspicion" standard to "interpretive like" statutes, such as the marked lanes statute, it did not.

{¶31}   The Ohio Supreme Court's decision in *Erickson* now seems to be in what can be called "legal purgatory."   *Erickson* clearly applied the probable cause standard to determining the validity of stopping a motorist for an alleged traffic code violation. *Erickson* did not explicitly reject the reasonable articulable suspicion standard, but the only logical inference that can be drawn from its use and reference to the probable cause standard is that any lesser standard is insufficient.   With *Mays*, if all police now need is the lesser included reasonable articulable suspicion standard, why only (or even) discuss the probable cause standard for traffic-code-violation stops?   The court in *Mays,* 2008-Ohio-4539, referenced *Erickson*, 76 Ohio St.3d 3, but did not overrule it or clearly distinguish it.   To say reasonable suspicion is subsumed by probable cause does not equate to the lesser standard being the correct one.   For example, the preponderance of the evidence will always be satisfied by proving something beyond a reasonable doubt.

Yet, it is doubtful anyone would attempt to argue that the preponderance of the evidence is sufficient to sustain a criminal conviction.

{¶32} Having a probable cause standard for traffic enforcement would not limit police authority where other factors, not related to traffic enforcement, are present to justify a vehicle stop. These have always been referred to as "investigatory stops," which are the motorized equivalent of a *"Terry"* stop. The investigative stop exception to the Fourth Amendment warrant requirement allows an officer to stop a motorist when he or she has a reasonable suspicion based upon specific, articulable facts that criminal activity has been or is occurring. *See State v. Slider*, 11th Dist. No. 2007-P-0096, 2008-Ohio-2318. What the higher probable cause standard did do was require police to have an actual violation to justify the stop. This led to consistent police enforcement practices across the state and ensured some base level of constitutional protections for Ohio motorists.

{¶33} By lowering the standard for traffic enforcement, we have now reached a level where police can stop a motorist because they have a suspicion of a traffic violation and not actual probable cause that a violation occurred. Admittedly, most traffic stops today still meet the *Erickson* standard for probable cause, but we are seeing a growing trend of cases that are clearly moving away from it. Consider *State v. Lindsey*, 2d Dist. No. 24943, 2012-Ohio-3105; *State v. Hammen,* 5th Dist. No. 2012CA0009, 2012-Ohio-3628; *State v. Woods,* 8th Dist. No. 98054, 2012-Ohio-5509; *Miller*, 5th Dist.

No. 2012-CA-25, 2012-Ohio-6147; *State v. Culberson*, 197 Ohio App.3d 705*, 2012-Ohio-448, 968 N.E.2d 597 (5th Dist.).

{¶34} As some legal commentators have noted under the current law,

> Anybody may be stopped for any traffic or parking violation, whether serious or noncriminal, based on reasonable suspicion alone. Once stopped, the officer may require not only production of a driver's license, documentation of the vehicle's ownership and registration, and proof of insurance, but may also ask questions unrelated to the traffic offense for which the stop was made. In addition to checking for outstanding warrants for the driver, the officer may, for no particular reason, run a criminal history check of the driver. Passengers may be asked to identify themselves even when not suspected of any criminal activity. Warrant, license, and criminal history checks of passengers may also be made for no particular reason. The officer may ask about the possession of drugs or weapons and for consent to search the car without any particular reason to believe there are drugs or weapons in the car. The officer may also use a drug detection dog to determine the possible presence of drugs in the car without any reasonable basis to suspect the presence of drugs.

Thomas M. Lockney and Mark A. Friese, *Constitutional Roadkill in the Courts*: *Looking to the Legislature to Protect North Dakota Motorists Against Almost Unlimited Police Power to Stop and Investigate Crime*, 86 N.Dak.L.Rev. 1 (2010).

{¶35} In my view, we have come full circle and are moving back to the pre-*Erickson* days where an officer's subjective assessment of traffic enforcement can trump the objective facts. This will invariably cause as many problems for prosecutors as it seems to relieve. Inconsistent interpretations may rule the day, and wading through and justifying the boilerplate rationale that is emerging for executing such stops will be a challenge.

**{¶36}** Nevertheless, in this case the officers had probable cause to effect the stop and were able to articulate a reasonable suspicion to remove Travis from the vehicle. Thus, this stop, search, and arrest would have passed muster under either *Erickson* or *Mays*.