OPINION
{¶ 1} Defendant-appellant, Lynn C. Hines ("Hines"), appeals the denial of his motion to suppress and his conviction in the Lake County Court of Common Pleas. Hines was indicted on one count of Theft, a fifth-degree felony in violation of R.C.2913.02(A)(1), and one count of Receiving Stolen Property, a fifth-degree felony in violation of R.C. 2913.51(A). Following a jury trial, Hines was acquitted of the Theft charge and found guilty of Receiving Stolen Property. Hines was sentenced to serve a ten-month prison term. For the following reasons, we affirm the decision of the court below.
 {¶ 2} On the afternoon of December 20, 2002, Judith Steiger ("Steiger") was holiday shopping with her eight-year-old son at Great Lakes Mall in Mentor, Ohio. Steiger and her son exited the mall from the Dillard's department store at the north end of the mall, where she had parked her truck. Steiger loaded her son and her packages into the truck. After seating herself in the driver's seat, Steiger looked up to see a man walking quickly from the front to the rear of a vehicle, a dark blue Chevrolet Beretta, parked in front of her. This vehicle was parked in the same direction as Steiger's truck so that its trunk was closest to the front of Steiger's truck. Steiger described the man as a thin, African-American male, with his hair worn close to his head. The man was carrying a stack of clothes, about a foot high, in his arms which he put in the trunk of the car. Steiger's suspicions were aroused that the clothing might be stolen because it was not in a bag and the tags, specifically Dillard's pink sales tags, were still attached to the clothing. The man entered the car and drove away.
 {¶ 3} Steiger called 911 from her cellular phone to report the incident, providing a description of the man, the vehicle, and the number of the temporary tag.[1]
 {¶ 4} Officer Todd Knupsky ("Knupsky") of the Mentor Police Department received the dispatch call at about 1:05 p.m., while he was patrolling on West Plaza Boulevard, on the west side of Great Lakes Mall. Officer Knupsky proceeded onto Mentor Avenue towards the mall entrance to Dillard's. As Officer Knupsky turned into the mall, he noticed a Beretta matching Steiger's description waiting to exit onto Mentor Avenue. The vehicle was driven by an African-American male with braids. There were two passengers in the vehicle, a woman in the front passenger's seat and a male in the rear passenger's seat. Officer Knupsky turned his car around and pulled up behind the Beretta, which bore a temporary tag in the back window with the same number as reported by Steiger.
 {¶ 5} The Beretta crossed Mentor Avenue and entered the parking lot of Value City Furniture located directly across from the mall. Officer Knupsky activated his overhead lights and stopped the vehicle. Hines was driving the Beretta. While waiting for backup, Officer Knupsky asked Hines for his driver's license, which Hines produced. Officer Knupsky then asked the passengers for identification, which they did not produce. The male passenger attempted to flee on foot but was apprehended. When Officer Knupsky was eventually able to run Hines' license through the LEADS computer system, he learned that the license had been suspended. Officer Knupsky placed Hines under arrest for driving with a suspended license and took him into custody.
 {¶ 6} Hines' vehicle was impounded. Officer John Koval ("Koval") conducted the search of the vehicle and found $1,173 worth of clothing with Dillard's price tags attached to them in the trunk. Two pieces of clothing were found inside a Dillard's bag. No receipts were found for the clothing and none of the clothing was marked with proof of purchase labels. All the merchandise recovered consisted of women's clothing.[2]
 {¶ 7} After being mirandized, Hines made a statement to the police. Officer Knupsky testified that Hines told him that he lived in Cleveland and that he had driven out to the mall to do some shopping. According to Knupsky, Hines said that the woman in the front seat was an acquaintance known only as "Nette" and that the other passenger was a friend of hers unfamiliar to Hines. After arriving at the mall, Hines and his passengers split up. When Hines returned to his vehicle, he found the clothing in the front seat of his car. According to Officer Knupsky, Hines stated that he knew Nette and her friend did not have any money and he believed that the merchandise was stolen. Hines admitted moving the clothing to the trunk because he did not want stolen merchandise in the vehicle's interior. Hines also admitted to picking up Nette and her friend as he was leaving the mall, although he was mad at them for putting stolen merchandise in his car.
 {¶ 8} At trial, Hines testified that he knew the female passenger as "Auntie" and that, prior to taking her and her friend to the mall, Auntie was wearing a nurse's uniform and told him she had just been paid.[3] Hines testified that he did not go into the mall that day, but went shopping at Toys R Us located across the street from the mall. Hines testified that when he returned to his vehicle, he found clothes in a Dillard's bag on the floor of the front passenger's seat and that he put this bag in the trunk so that the clothes would not be stolen. Hines also testified that he did not look inside the Dillard's bag and, therefore, was unable to say whether the clothing still carried price tags.
 {¶ 9} Hines was indicted on one count of Theft and one count of Receiving Stolen Property. Hines' trial was held from June 12, 2003 to June 13, 2003. Following a jury trial, Hines was acquitted of the Theft charge and found guilty of Receiving Stolen Property. On March 12, 2004, Hines was sentenced to serve a ten-month prison term. Hines timely appeals and raises the following assignments of error:
 {¶ 10} "[1.] The trial court erred to the prejudice of the defendant-appellant by failing to grant his motion to suppress in violation of his rights to due process of law and to be free from unreasonable search and seizure pursuant to the Fourth andFourteenth Amendments to the United States Constitution and Sections 10 and 14, Article I of the Ohio Constitution.
 {¶ 11} "[2.] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 12} "[3.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 13} In his first assignment of error, Hines argues that Officer Knupsky lacked grounds for the initial stop of Hines' vehicle. According to Hines, Steiger must be considered an "anonymous informant" because Knupsky was not made aware of her identity until after the stop. Hines further argues that the only details of the dispatch Knupsky was able to corroborate were the description of the vehicle and the temporary tag number and Knupsky did not personally observe Hines doing anything criminal.
 {¶ 14} At a suppression hearing, the trial court acts as the trier of fact. City of Ravenna v. Nethken, 2001-P-0040, 2002-Ohio-3129, at ¶ 13, citing State v. Mills (1992),62 Ohio St.3d 357, 366. As the trier of fact, the trial court must evaluate the evidence and judge the credibility of the witnesses.Mills, 62 Ohio St.3d at 366, citing State v. Fanning (1982),1 Ohio St.3d 19, 20. "The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence." State v. Searls (5th Dist., 1997),118 Ohio App.3d 739, 741. Accepting the trial court's determination of the factual issues, the court of appeals must conduct a de novo review of the trial court's application of the law to those facts. Id.; State v. Stiles, 11th Dist. No. 2002-A-0078, 2003-Ohio-5535, at ¶ 11.
 {¶ 15} The Fourth Amendment to the United States Constitution provides for "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." For the purposes of the Fourth Amendment, "stopping an automobile and detaining its occupants constitutes a `seizure'." Delaware v. Prouse (1979), 440 U.S. 648, 653. The investigatory stop exception to the Fourth Amendment allows a police officer to "approach a person for purposes of investigating possibly criminal behavior." Terry v. Ohio
(1968), 392 U.S. 1, 22. "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." State v. Williams
(1990), 51 Ohio St.3d 58, 61, quoting United States v. Cortez
(1981), 449 U.S. 411, 417. "[T]he police officer involved `must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Id., quoting Terry, 392 U.S. at 21.
 {¶ 16} "Where an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." Maumeev. Weisner, 87 Ohio St.3d 295, 1999-Ohio-68, paragraph one of the syllabus. The determination of whether a reasonable suspicion exists "involves a consideration of `the totality of the circumstances.'" Id., quoting Cortez, 449 U.S. at 417; Statev. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus. "A telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability." Weisner, 87 Ohio St.3d 295, at paragraph two of the syllabus. "A citizen-informant who is the victim of or witness to a crime is presumed reliable." State v.Livengood, 11th Dist. No. 2002-L-044, 2003-Ohio-1208, at ¶ 11 (citation omitted); State v. Claiborne (Jan. 24, 1997), 2nd Dist. No. 15964, 1997 Ohio App. LEXIS 195, at *10.
 {¶ 17} We hold that Steiger was a citizen-informant whose information Knupsky could presume reliable and that her tip bore sufficient indicia of reliability. Steiger left her name and telephone number with the police dispatcher so that Knupsky was able to contact her after Hines' arrest. Although the dispatcher did not relate Steiger's name and number to Knupsky in the initial dispatch, this information would have been meaningless as far as Knupsky's ability to evaluate the reliability of the information provided was concerned. What was important for evaluating the reliability of the informant, and what the dispatcher did relate to Knupsky, was that the informant was an eyewitness of the information received.
 {¶ 18} The dispatcher informed Knupsky that a woman shopping at the mall had observed a black male with braids place an armful of clothing, still carrying the sale tags and hangers, in the trunk of a blue Chevy Beretta with the temporary tag number C013171 and drive away. This information provided Knupsky with a reasonable suspicion that the occupants of Hines' vehicle were engaged in criminal activity sufficient to justify the investigatory stop. Weisner, 87 Ohio St.3d at 302 (informant who identified himself to the dispatcher and was an eyewitness of the events reported possessed a high degree of reliability). Moreover, Steiger's information was corroborated by Knupsky's own observations. Within minutes of the dispatch, Knupsky observed a Beretta matching Steiger's description driven by a man matching Steiger's description exiting the north end of the mall where Steiger had observed the vehicle. Therefore, Steiger's information bore sufficient indicia of reliability to justify the stop.
 {¶ 19} The dissent argues that it was necessary for Steiger to testify at the suppression hearing to establish the constitutionality of Knupsky's investigatory stop of Hines.[4]
 {¶ 20} This court has previously refused to adopt this position. In State v. Liberatore, 11th Dist. No. 2001-L-171, 2002-Ohio-3847, this court upheld the investigatory stop of a motorist based solely on a police dispatch. In Liberatore, as in this case, the complaining witness was an eyewitness to the activity reported and identified himself to the dispatcher but did not testify at the suppression hearing. Appellant argued that he should have had an opportunity to cross-examine the complaining witness. This court held that "the state's obligation at the suppression hearing was to demonstrate that [the patrolman] had a reasonable suspicion of criminal activity" and that "determination of this issue depends on [the patrolman's] belief as to the reliability of the information he had received at the time he conducted his investigatory stop * * *." Id. at ¶ 13. Since the information the patrolman received had a very high degree of reliability, as did Knupsky's information, the stop was constitutional. Id. A patrolman's or officer's belief as to the reliability of the information received depends on the information that the dispatcher relayed, not on the complaining witness' motivation or veracity.
 {¶ 21} This court also pointed out in Liberatore that inWeisner, the leading Ohio Supreme Court case on this issue, the citizen-informant did not testify at the suppression hearing. Id. at ¶ 7, citing Weisner, 87 Ohio St.3d at 296.
 {¶ 22} The first assignment of error is without merit.
 {¶ 23} In his second assignment of error, Hines argues that there was insufficient evidence to convict him of Receiving Stolen Property. In order to convict Hines, the state bore the burden of proving, beyond a reasonable doubt, that Hines "receive[d], retain[ed], or dispose[d] of property of another, knowing or having reasonable cause to believe that the property had been obtained through commission of a theft offense." R.C.2913.51(A). Hines claims the State failed to prove that Hines knew the clothing was stolen or had reason to believe it was stolen.
 {¶ 24} Under the Ohio Rules of Criminal Procedure, a defendant may move the trial court for a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Crim.R. 29(A). "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury," i.e. "whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, quoting, Black's Law Dictionary (6 Ed. 1990), 1433. Essentially, "sufficiency is a test of adequacy," that challenges whether the state's evidence has created an issue for the jury to decide regarding each element of the offense. Id.
 {¶ 25} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307, 319; Statev. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *14. In reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 26} The evidence introduced at Hines' trial was legally sufficient to convict him of Receiving Stolen Property. The State introduced evidence which, if believed, showed that Hines was in possession of $1,173 worth of clothing that was not in a bag and still carried sales tags, but did not carry proof of purchase labels. The evidence, if believed, further showed that Hines was aware that his passengers were not able to pay for so much clothing, that Hines believed the clothing had, in fact, been stolen, and that Hines placed the clothing in his trunk to avoid having stolen merchandise visible in his vehicle. This evidence is clearly sufficient to convince the average mind that Hines knew or had reason to know the clothing was stolen.
 {¶ 27} Hines' second assignment of error is without merit.
 {¶ 28} In the third and final assignment of error, Hines contends that his conviction is against the manifest weight of the evidence. Weight of the evidence, in contrast to its sufficiency, involves "the inclination of the greater amount ofcredible evidence." Thompkins, 78 Ohio St.3d at 387 (emphasis sic) (citation omitted). Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v. Thomas (1982),70 Ohio St.2d 79, at syllabus. When reviewing a manifest weight challenge, however, the appellate court sits as the "thirteenth juror." Thompkins, 78 Ohio St.3d at 387. The reviewing court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 29} Hines argues that the greater weight of credible evidence showed that the only reasonable inference he could draw from the facts known to him was that the Dillard's merchandise had been legally purchased. Hines relies on his trial testimony that he was not aware of his passengers' true identity or character, that Nette/Auntie wore a nurse's uniform and told him that she had just been paid, and that the clothing was in a Dillard's bag.
 {¶ 30} While this evidence tends to support the conclusion that Hines could reasonably believe the merchandise was legally purchased, it is neither conclusive nor overwhelming. Almost every piece of evidence Hines relies upon is contradicted by other evidence in the record. Officer Knupsky testified that Hines made a statement following his arrest to the effect that Hines believed the clothing had been stolen because he knew his passengers did not have any money and that he did not want to be found with stolen merchandise in his vehicle. Contrary to Hines' testimony, Officer Koval testified that only two pieces of the clothing recovered from the trunk of Hines' car were in a Dillard's bag, and Steiger testified that none of the clothing she observed Hines carrying was in a bag. Moreover, there was no evidence in the record to contradict Koval's and Steiger's testimony that the clothing still carried the price tags. Since there was equally credible evidence that the Dillard's merchandise recovered from Hines' vehicle had not been legally purchased, we decline to reverse Hines' conviction as being against the manifest weight of the evidence.
 {¶ 31} Hines' third assignment of error is without merit.
 {¶ 32} For the foregoing reasons, the denial of Hines' motion to suppress and his conviction in the Lake County Court of Common Pleas are affirmed.
O'Toole, J., concurs,
O'Neill, J., dissents with a Dissenting Opinion.
[1] Steiger testified at Hines' trial, but not at the hearing on Hines' motion to suppress.
[2] The Dillard's store anchoring the north end of Great Lakes Mall, where Steiger observed Hines, only sells men's clothing, children's clothing, and household items. There is a second Dillard's store located at the southern end of Great Lakes Mall, which sells women's clothing. At trial, Eric Newsome, Dillard's operations manager at Great Lakes Mall, identified all the clothing recovered from Hines' vehicle as coming from a Dillard's store, although it was impossible to identify the specific store.
[3] Both occupants of Hines' vehicle provided false names to the police. Auntie, whose real name is Brenda Walker, is known by twenty-eight different aliases including Antoinette Ligan. The male passenger was ultimately identified as Keith Sanders.
[4] The dissent stresses the fact that, prior to the suppression hearing, the reliability of Steiger's information had not been examined. Outside of the suppression hearing itself, it is unclear what judicial forum exists for examining this information. Moreover, we point out that any verification of the information received after the stop is made has absolutely no bearing on the reasonableness of the stop itself. In deciding to effectuate a stop, the officer in these circumstances will often know nothing more than what he has been told.