OPINION
{¶ 1} Billy L. Key, II, ("Mr. Key") appeals from a judgment of the Mentor Municipal Court in Lake County finding him guilty of operating a motor vehicle while under the influence of alcohol ("OVI") in violation of R.C. 4511.19. Mr. Key challenges in particular the court's denial of his motion to suppress. For the following reasons, we affirm.
 {¶ 2} Substantive Facts and Procedural History *Page 2 
 {¶ 3} Around 11:00 p.m. on August 8, 2007, Officer Stirewalt of the Mentor Police Department received a dispatch based on a citizen's report of a possible impaired driver operating a red Oldsmobile Alero on State Route 2 approaching Center Street. When Officer Stirewalt arrived at the area, he observed a red Alero and a silver Monte Carlo exiting State Route 2, but, instead of turning right or left onto Center Street, both vehicles went through the intersection and reentered State Route 2, in violation of a traffic rule.
 {¶ 4} Officer Stirewalt then observed both vehicles weave back and forth between lanes on State Route 2. As Officer Stirewalt reported his observations to the police dispatch, Officer Wurgler, also of the Mentor Police Department, was patrolling in the area. When he heard Officer Stirewalt's report over the police radio, Officer Terry Wurgler ("Officer Wurgler") proceeded to the area to provide assistance. When he arrived, he saw Officer Stirewalt activate his overhead lights and siren and pull over the red Alero. The silver Monte Carlo continued on and made a turn to go southbound on State Route 44. Officer Wurgler followed the vehicle on State Route 44, activated his overhead lights and siren, and stopped the vehicle.
 {¶ 5} Upon approaching the passenger side of the vehicle, Officer Wurgler spoke with both Mr. Key, the driver of the vehicle, and his passenger. He smelled an odor of alcohol emitting from the vehicle's interior. Mr. Key and his passenger admitted they had consumed a few drinks earlier that evening. Officer Wurgler then asked Mr. Key to perform a field sobriety test.
 {¶ 6} Mr. Key was subsequently charged with Driving While Under the Influence of Alcohol, in violation of Mentor City Ordinance section 333.01(A)(1)(a), and Marked *Page 3 
Lanes, in violation of Mentor City Ordinance Section 331.08. The court later allowed the city to amend the offense charged against Mr. Key as OVI under R.C. 4511.19.
 {¶ 7} On September 12, 2007, Mr. Key filed a motion to suppress. At the suppression hearing on October 22, 2007, Officer Wurgler stated that he had been working for a year-and-a-half as a patrol officer for the City of Mentor Police Department. He testified that he heard over his radio Officer Stirewalt's report regarding a red Alero and a silver Monte Carlo driving erratically on State Route 2. In particular, Officer Stirewalt reported that the Alero was driving down the center of the two eastbound lanes for a quarter mile and then swerving back and forth between the lanes. At one point, it went into the fog line of the left lane of the westbound road. Officer Stirewalt reported that the Monte Carlo in front of the Alero was "driving equally as poor."
 {¶ 8} Upon hearing Officer Stirewalt's observations regarding these vehicles, Officer Wurgler went to the area to provide assistance. When he caught up with the Monte Carlo, driven by Mr. Key, on State Route 44, he activated his lights and siren. He then observed the vehicle driving two or three feet left of the center line on State Route 44, a two-lane road, before drifting back into its own lane. The vehicle continued on for three to four hundred feet before it finally pulled over, which Officer Wurgler described as unusual in this situation.
 {¶ 9} Officer Wurgler testified that when the vehicle finally stopped, instead of pulling off the road completely, its driver-side tires were resting on the white fog line of the right lane of the road, "almost in traffic." As a result, he had to approach the vehicle on the passenger's side. When the passenger of the vehicle rolled down the window, *Page 4 
Officer Wurgler immediately smelled a "strong" odor of alcohol emitting from the vehicle. When he informed Mr. Key and his passenger that a police officer had observed his vehicle driving "back and forth in [his] lanes and into another lane," Mr. Key and his passenger both admitted they "just had a few drinks" on 222nd Street. Officer Wurgler noted that Mr. Key avoided making any eye contact with him during the conversation, as if to prevent the officer from being able to look into his eyes. Officer Wurgler also stated he had difficulties observing Mr. Key's speech, because he was listening across the vehicle and because the passenger was talking at the same time. When Officer Wurgler removed Mr. Key from his vehicle and administered the horizontal gaze nystagmus test, he smelled a "very strong" odor of alcohol emitting from his person.
 {¶ 10} On October 22, 2007, the trial court entered a judgment denying Mr. Key's motion to suppress. On October 30, 2007, the city of Mentor withdrew the charge of Marked Lanes violations; Mr. Key pled no contest to the charge of OVI in violation of R.C. 4511.19; and the court found him guilty of OVI and sentenced him to a jail term of ninety days.
 {¶ 11} Mr. Key timely filed the instant appeal, raising one assignment of error for our review:
 {¶ 12} "[1.] The trial court erred by denying the defendant-appellant's motion to suppress in violation of his due process rights and rights against unreasonable search and seizure as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United State Constitution and Sections 10 and 14, Article 1 of the Ohio Constitution."
 {¶ 13} Standard of Review *Page 5 
 {¶ 14} "At a hearing on a motion to suppress, the trial court functions as the trier of fact, and, therefore is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of any witnesses." State v. Molek, 11th Dist. No. 2001-P-0147, 2002-Ohio-7159, at ¶ 24, citing State v. Mills (1992), 62 Ohio St.3d 357, 366. "The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence."State v. Hines, 11th Dist. No. 2004-L-066, 2005-Ohio-4208, at ¶ 14, citing State v. Searls (1997), 118 Ohio App.3d 739, 741. When ruling on a motion to suppress, we give due deference to the trial court's assignment of weight and inferences drawn from the evidence. State v.Perl, 11th Dist. No. 2006-L-082, 2006-Ohio-6100, at ¶ 9, citingState v. Hummel (2003), 154 Ohio App.3d 123, 2003-Ohio-4602, at ¶ 11.
 {¶ 15} "Accepting the trial court's determination of the factual issues, the court of appeals must conduct a de novo review of the trial court's application of the law to those facts." Hines at ¶ 14 (citations omitted).
 {¶ 16} Further Detaining after a Traffic Stop
 {¶ 17} On appeal, Mr. Key does not contest the propriety of the initial traffic stop. Rather, he contends that Officer Wurgler improperly detained him for the administration of a field sobriety test.
 {¶ 18} It has been established that "probable cause is not needed before an officer conducts field sobriety tests." Columbus v.Anderson (1991), 74 Ohio App.3d 768, 770; State v. Gustin (1993),87 Ohio App.3d 859. However, "[a]n officer may not expand the investigative scope of the detention beyond that which is reasonably *Page 6 
necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is afoot." State v.Seal, 11th Dist. No. 2003-L-163, 2004-Ohio-5938, at ¶ 21, citingState v. Vanderhoff (1995), 106 Ohio App.3d 21, 26; see, also, State v.Waldroup (1995), 100 Ohio App.3d 508, 513, citing State v. Myers (1990),63 Ohio App.3d 765, 771. ("If during the scope of the initial stop an officer encounters additional specific and articulable facts which give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may detain the vehicle and driver for as long as the new articulable and reasonable suspicion continues.")
 {¶ 19} As we explained in State v. Evans (1998), 127 Ohio App.3d 56, because further detaining for the purpose of performing the field sobriety test is "a greater invasion of an individual's liberty interest than the initial stop, the request to perform these tests must be separately justified by specific, articulable facts showing a reasonable basis for the request." Id. at 62 (citation omitted). Moreover, "[although the facts that served as the impetus for the stop may also assist in providing this separate justification, additional articulable facts are necessary." Id. at 62-63.
 {¶ 20} In Evans, we enumerated eleven factors that the trial court should consider in evaluating whether an officer's decision to conduct the sobriety tests was warranted. The first four factors pertain to an officer's observations prior to the traffic stop; the last seven factors pertain to additional observations after the stop. These factors are:
 {¶ 21} "[(1)] the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling *Page 7 
alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor as described by the officer (`very strong,' `strong,' `moderate,' `slight,' etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given." Evans at footnote 2.
 {¶ 22} These factors are not conditions precedent for a constitutionally valid decision to further detain a driver for a field sobriety test. Rather, they are merely factors to aid in our analysis of the propriety of such a decision by an officer. As we emphasized inEvans, cases considering an officer's decision to further detain a driver for the administration of roadside sobriety tests rely on the totality of relevant circumstances. Id. at 63.
 {¶ 23} Here, Officer Wurgler initiated a stop of Mr. Key's vehicle after he heard over his radio Officer Stirewalt's observations of weaving and otherwise poor driving by Mr. Key's vehicle. On appeal, Mr. Key does not challenge the propriety of Officer Wurgler's decision to stop his vehicle. The sole issue to be resolved in this appeal is whether Officer Wurgler's decision to further detain Mr. Key for a field sobriety test is *Page 8 
supported by additional specific and articulable facts giving rise to a reasonable suspicion that Mr. Key committed the offense of OVI.
 {¶ 24} The record reflects that after Officer Wurgler activated his overhead lights and sirens to stop Mr. Key's vehicle, he observed the vehicle drive two or three feet left of the center line on a two-way road before drifting back to its own lane. Furthermore, Mr. Key continued to drive for three or four hundred feet before finally coming to a stop, which Officer Wurgler commented was unusual for a driver to do in this situation. The officer also observed Mr. Key did not completely pull off the road, but rather rested his driver-side tires on the white fog line of the right lane of the road, "almost in traffic." When he approached the vehicle, he smelled a strong odor of alcohol emitting from the interior of the vehicle. He was not able to observe the condition of Mr. Key's eyes, because Mr. Key would not look at him while being questioned, as if to avoid the officer's looking into his eyes. Officer Wurgler was also unable to determine whether Mr. Key's speech was impaired because he was listening from the passenger side and because Mr. Key and his passenger were answering his questions simultaneously. Mr. Key and his passenger, however, admitted that they "just had a few drinks" on 222nd Street.
 {¶ 25} Although not all eleven elements enumerated in Evans were present in this case, it is the totality of relevant circumstances that we rely on in evaluating an officer's decision to conduct a field sobriety test, as we noted in Evans. Id. at 64.
 {¶ 26} Consequently, looking at the totality of the events leading to Officer Wurgler's decision to further detain Mr. Key for a field sobriety test, we conclude specific and articulable facts existed justifying a reasonable suspicion that Mr. Key was driving *Page 9 
under the influence of alcohol. Waldroup at 513; Evans at 62. Besides Officer Stirewalt's report of erratic driving by Mr. Key's vehicle, the reliability of which Mr. Key does not challenge on appeal, Officer Wurgler had additional specific articulable facts after he activated his lights and siren to stop Mr. Key's vehicle that separately justified his decision to further detain Mr. Key for a field sobriety test.Evans at 62-63.
 {¶ 27} Therefore, we conclude the trial court properly applied the law to the facts deduced at the suppression hearing surrounding Officer Wurgler's decision to detain Mr. Key for the administration of a field sobriety test. Mr. Key's assignment of error is without merit.
 {¶ 28} The judgment of the Mentor Municipal Court is affirmed.
 DIANE V. GRENDELL, P.J., TIMOTHY P. CANNON, J., concur. *Page 1