[Cite as *State v. Tarrance*, 2013-Ohio-2831.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**


STATE OF OHIO,                                    :        **O P I N I O N**

          Plaintiff-Appellant,          :

    - vs -                                         :        **CASE NO. 2012-P-0073**

DEMAR J. TARRANCE,                         :

          Defendant-Appellee.        :


Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R2012 TRC 00791.

Judgment: Reversed and remanded.


*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*J. Chris Sestak*, Student Legal Services, Inc., Kent State University, 164 East Main Street, #203, Kent, OH 44240 (For Defendant-Appellee).


DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, the State of Ohio, appeals from the judgment of the Portage County Municipal Court, Ravenna Division, granting defendant-appellee, Demar J. Tarrance's, Motion to Suppress. The issue to be decided in this case is whether a police officer has reasonable suspicion to conduct a traffic stop for a window tint violation when he observes a vehicle passing by his police cruiser, in the dark, and concludes, based on his experience and training in the area of window tinting, that the

vehicle's side window was excessively tinted. For the following reasons, we reverse and remand the decision of the court below.

{¶2} On January 20, 2012, Tarrance was issued a Complaint, charging him with two counts of Operating a Vehicle While Under the Influence (OVI), misdemeanors of the first degree, in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(d), and a Window Tint violation, a minor misdemeanor, in violation of R.C. 4513.241.

{¶3} On March 2, 2012, Tarrance filed a Motion to Suppress/Motion in Limine, in which he requested that certain evidence be suppressed since, inter alia, there was no reasonable suspicion to stop or detain Tarrance. He argued that the police officer viewed his car and its windows for only a moment, in the dark, and this did not provide a reasonable suspicion to conduct a stop of his vehicle for a Window Tint violation.

{¶4} A Suppression Hearing was held on June 12, 2012. The following testimony and exhibits were presented.

{¶5} Trooper John Lamm, of the Ohio State Highway Patrol, testified regarding his stop of Tarrance. On January 20, 2012, at approximately 1:15 a.m., Trooper Lamm was on patrol and was stationary, facing traffic, in the Key Bank parking lot on State Route 43 in Kent, Ohio. He observed Tarrance's vehicle traveling southbound past him for a "couple of seconds," and noticed that the front passenger side window was "extremely dark." He had his headlights on at the time and could not "make out anything inside the car," except maybe "a shadow or something in there but not able to make out hardly anything in the vehicle it was so dark." At that time, he believed it was well within the range of window tint prohibited by law. Trooper Lamm stated that nothing was impeding his view and he could see the car approaching his position. He explained that the fact that it was dark did not affect his ability to see the window tint.

2

**{¶6}** Trooper Lamm testified that he had been trained on window tint law and had stopped numerous cars for such violations, estimating that "[i]t could be in the hundreds," and noting that window tint "has been one of [his] things."

**{¶7}** The video from Trooper Lamm's dash camera was presented and showed Tarrance's car passing by Trooper Lamm's parked cruiser. It revealed that Lamm's headlights were shining on the passenger side of Tarrance's car as it passed by and that Trooper Lamm pulled out a few seconds after Tarrance's car passed by to effectuate the stop.

**{¶8}** Upon being stopped, Tarrance was "laughing" and made a comment about knowing that his window tint was dark. Trooper Lamm returned to his cruiser to get a tint meter, a device used to measure the amount of light that passes through a tinted window. Trooper Lamm tested the driver's side window, and it read "13," which was the percent of light being let inside of the car. This fell well below the 50 percent minimum light required to be able to pass through the window.

**{¶9}** On cross-examination, Trooper Lamm stated that another officer was at the Key Bank parking lot beside him, but he could not remember if that officer's car was parked to his right or to his left. He explained that there was not a lot of light on the roadway.

**{¶10}** Trooper Lamm stated that he did not test the passenger window with the tint meter, although that was the window he observed when initially watching Tarrance's vehicle pass. He stated that in his experience, "most people get windows tinted the same on both sides," explained that he had never seen one side window tinted differently than the other, and that both windows on Tarrance's car looked "identical."

3

{¶11} On July 6, 2012, the trial court issued a Judgment Entry, granting Tarrance's Motion to Suppress. The court found that Trooper Lamm "observed Defendant's vehicle and front passenger window approximately 40 to 50 feet before Defendant's vehicle passed in front of the Trooper's vehicle." The court found that Trooper Lamm observed a passenger window that was "extremely dark," and could only see "shadows" in the car. The court further found that when Trooper Lamm approached the vehicle after conducting a stop, he did not test the front passenger window with his window tint meter, but did check the driver's side window. Finally, Trooper Lamm "was only able to observe Defendant's vehicle for approximately 1.4 seconds before deciding to pull out of the Key Bank parking lot and initiate a traffic stop."

{¶12} The court held that Trooper Lamm "should have conducted a more reasonable inquiry before stopping Defendant's vehicle by driving alongside Defendant's vehicle and determining to what extent he could see through Defendant's tinted windows." The court ultimately concluded that Trooper Lamm "should have and could have made a more reasonable inquiry as to Defendant's tinted windows before stopping Defendant's vehicle." The court granted the Motion to Suppress and dismissed the charges against Tarrance.

{¶13} The State timely appeals and raises the following assignment of error:

{¶14} "The Portage County Municipal Court erred in determining that a Trooper's observation and visual estimate regarding the percentage of a vehicle's window tint did not establish a reasonable suspicion to justify a traffic stop."

{¶15} "The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses." (Citations omitted.) *State v. Ferry*, 11th Dist. No. 2007-L-217, 2008-Ohio-2616, ¶ 11. "[T]he trial court is

best able to decide facts and evaluate the credibility of witnesses." (Citation omitted.) *State v. Wagner*, 11th Dist. No. 2010-P-0014, 2011-Ohio-772, ¶ 12. "The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence." *State v. Hines*, 11th Dist. No. 2004-L-066, 2005-Ohio-4208, ¶ 14. "Once the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts." (Citations omitted.) *Ferry* at ¶ 11.

{¶16} In the present matter, Tarrance was stopped by Trooper Lamm due to his determination that Tarrance's passenger window was excessively tinted, in violation of the law. Pursuant to R.C. 4513.241(A), "[t]he director of public safety * * * shall adopt rules governing the use of tinted glass" in motor vehicle windows "that prevent a person of normal vision looking into the motor vehicle from seeing or identifying persons or objects inside the motor vehicle." The applicable rules establish that a person shall not operate a motor vehicle with any "material which has the effect of making the windshield or windows nontransparent or would alter the windows' color, increase its reflectivity, or reduce its light transmittance, unless the product or material * * * applied to the side windows to the immediate right or left [of] the driver * * * has a light transmittance of not less than fifty per cent plus or minus three per cent * * *." Ohio Adm.Code 4501-41-03(A)(3).

{¶17} The State argues that the trial court erred in holding that Trooper Lamm did not conduct a sufficient investigation to provide him with reasonable suspicion to stop Tarrance's vehicle. The State asserts that there was reasonable suspicion of a window tint violation to justify the stop of Terrance, when considering the totality of the

5

circumstances, including Trooper Lamm's experience, his vantage point in tracking the vehicle, and his direct observations of the vehicle, which were further supported by his testing of the driver's side window, confirming that the side windows were excessively tinted.

{¶18} Tarrance argues that there was no reasonable suspicion to conduct the stop since Trooper Lamm observed his vehicle for less than two seconds, in the dark, and failed to test the passenger window with the window tint meter.

{¶19} "A police officer may stop an individual if the officer has a reasonable suspicion, based on specific and articulable facts that criminal behavior has occurred or is imminent. *Terry v. Ohio* (1968), 392 U.S. 1, 21. Detention of a motorist is reasonable when there exists probable cause to believe a crime, including a traffic violation, has been committed. *Whren v. United States* (1996), 517 U.S. 806, 810." *State v. McNulty*, 11th Dist. No. 2008-L-097, 2009-Ohio-1830, ¶ 11.

{¶20} The determination of whether reasonable suspicion exists "involves a consideration of 'the totality of the circumstances.'" *Hines*, 2005-Ohio-4208, at ¶ 16, citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 299, 720 N.E.2d 507 (1999) (citation omitted). The court must consider the totality of the circumstances surrounding the stop as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). "The court reviewing the officer's actions must give due deference to the officer's experience and training, and view the evidence as it would be understood by those in law enforcement." (Citations omitted.) *State v. Teter*, 11th Dist. No. 99-A-0073, 2000 Ohio App. LEXIS 4656, *8 (Oct. 6, 2000).

{¶21} In the present case, the trial court concluded that a more reasonable inquiry was required to conduct the stop. It did not find, however, that Trooper Lamm was not credible or reject his testimony that he observed Tarrance's car pass by and believed that the windows were excessively tinted, based on his experience. Instead, the court concluded that Trooper Lamm "should have conducted a more reasonable inquiry before stopping Defendant's vehicle by driving alongside Defendant's vehicle." We disagree. The correct legal standard is not whether the officer could have done more, rather, whether he had probable cause to believe a violation had occurred based on the totality of the circumstances.

{¶22} When considering the totality of the circumstances and viewing the stop through the eyes of Trooper Lamm, there was a reasonable suspicion to conduct a stop for a window tint violation. The testimony of Trooper Lamm, as confirmed by the trial court's Judgment Entry and factual findings, was that he observed Tarrance's car in the dark, travelling a distance of approximately 40 to 50 feet, with his headlights shining on the car at one point, for a short period of time (determined to be 1.4 seconds by the trial court), and found the windows to be "extremely dark." He explained that based on his many experiences with window tinting and his training, he believed the windows to be illegally tinted. Trooper Lamm also testified that the fact that it was dark outside did not impact his ability to determine that the window was excessively tinted. Again, no finding was made by the court that these statements were not credible, but instead its only determination was a legal conclusion that further investigation was necessary to have reasonable suspicion. When accepting the facts as determined by the lower court, under the totality of the circumstances, there was reasonable suspicion to conduct the stop under the foregoing circumstances.

7

{¶23} Stops with similar circumstances have been found to be valid by other districts. For example, in *State v. Taylor*, 114 Ohio App.3d 416, 683 N.E.2d 367 (2nd Dist.1996), the court found that there was reasonable suspicion to conduct a stop for a window tint violation when an officer viewed a vehicle passing by at approximately 12:47 a.m., noticed the window tinting "appeared exceptionally dark," and could not see into the vehicle even with the cruiser headlights "shining directly on the vehicle." *Id.* at 418-421. Tarrance argues that *Taylor* is distinguishable due to the fact that the court found that the headlights were shining directly on the windows, while in the present matter, the dashcam video shows that the lights were on the car, but not on the windows. However, this does not negate the fact that there was light directed toward Tarrance's vehicle to assist Trooper Lamm in determining whether the windows were excessively dark, especially when viewed in light of Lamm's testimony that the darkness did not inhibit his ability to determine that the windows were tinted, that his headlights were on the vehicle, and the court made no finding that the darkness inhibited Lamm's ability to see Tarrance's vehicle.

{¶24} Similarly, in *Richmond Heights v. Williams*, 8th Dist. No. 73500, 1998 Ohio App. LEXIS 5572 (Nov. 25, 1998), where an officer viewed the defendant's side windows for "a very short amount of time," in a lit area, the officer "only had to notice whether the windows appeared to be excessively tinted" to have reasonable suspicion to conduct a stop. *Id.* at *6. *See also State v. Stewart*, 2nd Dist. No. 19961, 2004-Ohio-1319, ¶ 15 (a stop for a window tint violation was proper when an officer observed a car passing by at 12:10 a.m., and the officer was "reasonably certain, based upon his experience, that the darkly tinted windows violated legal window tint limits"). It should be emphasized that Trooper Lamm "was not required, as a predicate for effecting the

8

stop, to conclude, beyond reasonable doubt," that Tarrance's windows were excessively tinted, but just that he had a "reasonable and articulable suspicion, based upon his observations," that they were unlawfully tinted. *State v. Terry*, 2nd Dist. No. 18166, 2000 Ohio App. LEXIS 3145, *9 (July 14, 2000).

**{¶25}** Tarrance argues in his brief that the court "concluded that Lamm had [a] dark, probably obstructed, angled view of only the passenger window." However, it should be emphasized that the court made no such conclusions or findings in its Judgment Entry that Trooper Lamm's view was either obstructed or angled in reaching its determination that the stop was not supported by reasonable suspicion.

**{¶26}** In addition, we find no case law to support a conclusion that a specific length of time is required to investigate a window tint violation or that an officer must drive beside a vehicle in order to confirm the presence of unlawful window tinting. Tarrance cites *State v. Polk*, 5th Dist. No. 07COA007, 2008-Ohio-190, for the proposition that an officer should drive beside a vehicle to determine if side windows are excessively tinted. In *Polk*, the officer did make the window tint observation after driving beside the defendant's vehicle, in the absence of any adverse conditions. *Id.* at ¶ 18. That court did not state these were the only circumstances that could be present for a valid stop for a Window Tint violation or that an officer must drive beside the vehicle to have a reasonable suspicion of a violation. These were merely the facts before the court in that case. This does not foreclose a finding in the present matter that a reasonable suspicion can exist in different circumstances.

**{¶27}** Based on the totality of the circumstances and the foregoing cases, Trooper Lamm had a reasonable suspicion to stop Tarrance, based on his observations

of the Window Tint violation. He was not required to drive beside Tarrance's vehicle in order to have a reasonable suspicion to perform the traffic stop.

{¶28} Tarrance argues that, in addition to the foregoing, this court must also consider that Trooper Lamm, after conducting the stop, did not test the passenger window he observed prior to the stop, but instead tested only the driver's side window. Tarrance asserts that the test performed did not confirm that the passenger window, which provided the justification for the stop, was actually illegally tinted.

{¶29} Trooper Lamm, upon seeing the tinted passenger window, conducted the stop based on the belief that Tarrance was violating the law, and had reasonable suspicion to do so, as outlined above. No argument has been advanced by Tarrance that he was detained for an unnecessarily long period of time after the stop was effectuated, because Trooper Lamm found information contrary to his initial belief that the windows were improperly tinted, nor was such a reason given by the court as the basis for granting the motion to suppress. Further, no argument is presented that an officer has to confirm his reasonable suspicion by conducting a window tint meter test of the windows after the stop has occurred. Even in circumstances where a stop is based on a mistaken belief that there has been a violation of the law, however, it has been held that the stop is still valid as long as it is based on the reasonable belief that a violation of the law had been committed. *See State v. Schmucker*, 11th Dist. No. 2008-P-0027, 2008-Ohio-6885, ¶ 24-29. In the present matter, even if Trooper Lamm did not confirm that the passenger window was excessively tinted in violation of the law, this does not negate his reasonable suspicion for effectuating the stop. The test of the driver's window only provided additional support to Lamm's original suspicion that the passenger side window was tinted, given that it showed the window to be excessively

10

tinted and Trooper Lamm stated the both windows appeared to be "identical." The test was taken after a stop with reasonable suspicion and simply provided confirmation that a violation of the law occurred, which warranted a citation.

{¶30} Further, in *State v. Courts*, 2nd Dist. No. 20328, 2004-Ohio-3789, a similar incident occurred and the stop was found to be proper. In *Courts*, a stop was held to be valid when two officers initially observed a tinted passenger's side window, one officer tested only the driver's side window, and the officers testified that both the passenger and driver's side windows appeared to be tinted equally. *Id.* at ¶ 2-4.

{¶31} In light of the preceding analysis, we hold that the trial court erred in granting Tarrance's Motion to Suppress and dismissing the charges against Tarrance.

{¶32} The sole assignment of error is with merit.

{¶33} Based on the foregoing, the judgment of the Portage County Municipal Court, Ravenna Division, granting Tarrance's Motion to Suppress, is reversed and remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.


TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.

11